

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

LKG/KDE  *271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 7, 2018

By ECF, E-mail and Hand

The Honorable Dora L. Irizarry
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Robert Pisani
              Criminal Docket No. 17-155 (S-2) (DLI)

Dear Chief Judge Irizarry:

      The government respectfully submits this letter in advance of the defendant Robert Pisani's sentencing, which is scheduled for June 21, 2018 at 10:00 a.m.  Given the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends that the Court impose a Guidelines sentence of 21 months' imprisonment.

I.      Background

      On November 17, 2017, the defendant pleaded guilty to the sole count of the second superseding information (the "Information"), charging conspiracy to collect an unlawful debt, in violation of 18 U.S.C. §§ 1962(d) and 1963.  See Pre-Sentence Investigation Report ("PSR") ¶ 1.  The defendant was charged in the Information (and the underlying indictments) based on his association with the Bonanno crime family of La Cosa Nostra (the "Bonanno crime family"), and his criminal conduct on its behalf.  See id. ¶¶ 1, 12.  More specifically, the defendant was an associate on record with inducted soldier and, later, acting captain Ronald Giallanzo.  See id. ¶ 12.  Through his guilty plea, the defendant admitted to conspiring to conduct and participate in the affairs of the Bonanno crime family through the collection of an unlawful debt that was incurred through illegal gambling activity.

      Specifically, in 2012, John Doe #19 placed bets with the defendant in an illegal sports gambling business and, after a month, owed the defendant a debt.  See id. ¶ 55.  After some time, and around the time of the defendant Ronald Giallanzo's release from prison (which was in April 2013), John Doe #19 heard that people were saying that he owed

money.  One day, while in a gym, a Bonanno crime family associate ("Associate-1"), who, like the defendant, was on record with Giallanzo, approached John Doe #19 and told him that he owed money to the defendant and Giallanzo.  See id.  Although the defendant may not have been aware, John Doe #19 had heard that Giallanzo was saying that he was going to hit John Doe #19 with a bat.  See id.  Ultimately, John Doe #19 paid approximately $6,000 to Giallanzo and his associates to repay the illegal debt owed to the defendant.  See id.

In addition to the conduct underlying the defendant's crime of conviction, the defendant committed other misconduct that, as set forth below, the government respectfully submits the Court may consider under 18 U.S.C. § 3553(a).  For instance, since approximately 2005, the defendant operated an illegal sports betting business in which gamblers placed their bets online and paid the defendant their losses at his businesses.  See id. ¶¶ 34, 42.  Beginning in 2008, one of those gamblers, John Doe #11, borrowed $25,000 from the defendant and paid weekly interest payments of 1.5% to 3%, without reducing the principal.  John Doe #11 paid the defendant a total of nearly $100,000 in weekly interest payments, yet by 2013, he still owed the defendant $5,000.  See id.

Further, in connection with the home located at 164-04 86th Street the defendant sold to Giallanzo (which Giallanzo turned into a mansion constructed with illicit proceeds), the defendant received approximately $700,000 in cash and the cancellation of an approximately $300,000 to $350,000 debt he owed to Giallanzo.  Contrary to the defendant's statements to the Probation Department, cf. id. ¶ 219, Giallanzo's wife does not currently and has never owed the defendant any money in connection with the sale.[1]

II.     Applicable Law

In Gall v. United States, 552 U.S. 38 (2007), the Supreme Court set forth the procedure that sentencing courts must follow in light of United States v. Booker, 543 U.S. 220, 258-60 (2005):

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.

Gall, 552 U.S. at 49 (citation omitted).  Next, a district court must "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, [a district court] may not presume that the Guidelines range is reasonable.  [A district court] must make an individualized assessment based on the facts presented."  Id. at 49-50 (citation and footnote omitted).

---

[1] Ronald Giallanzo's financial disclosure form completed in connection with his sentencing in this case makes no mention of Elizabeth Giallanzo's alleged "mortgage" or "debt" to the defendant.

2

Section 3553(a) directs the sentencing court to consider the following factors, among others, when imposing a particular sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; and (C) to protect the public from further crimes of the defendant.

At sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, Title 18, United States Code, Section 3661 expressly provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Thus, the Court must first calculate the correct Guidelines range, and then apply the Section 3553(a) factors to arrive at an appropriate sentence, considering all relevant facts.

III.     The PSR and Guidelines Analysis

   A.     Outstanding Objections to the PSR

As set forth in the parties' various letters setting forth objections to the PSR, there are certain, unresolved issues that may affect the Court's sentence:

   1.     The Government's Objections

In response to paragraph 215, the government asserted that the defendant and his brother were the true beneficial owners of the property where the All American Deli was located but that they used their mother's name on the relevant paperwork because she had the best credit. (See Gov. May 15, 2018 Ltr. at 1.) The defendant, in turn, states only that "the All American Deli was a family owned and run business in which his mother, brother and [the defendant] participated." (May 29, 2018 Def. PSR Obj. Ltr. at 1.) The government understands this to be an admission that the defendant and his brother used their mother's name for real estate paperwork because she had the best credit.

In response to paragraphs 219 (and 73), the government challenged the defendant's statement to the Probation Department that in connection with the sale of his home to Ronald Giallanzo, Elizabeth Giallanzo owes the defendant a $410,000 mortgage balance that is not collectible. In fact, the "mortgage" is the cancellation of a debt the defendant owed to Giallanzo, and "Elizabeth Giallanzo does not owe the defendant any money, that the defendant has no intention on collecting any of that loan and has never taken steps to actually collect on that loan." (May 15, 2018 Gov. PSR Obj. Ltr. at 2.) The defendant, in turn, states only that the mortgage "does not constitute an asset" and that the government's response should not be included in the PSR because the defendant was not charged with this conduct. (May 29, 2018 Def. PSR Obj. Ltr. at 1.)

3

Regardless of whether or not this conduct is the subject of criminal charges, it is directly relevant to the Court's analysis under 18 U.S.C. § 3553(a) because it concerns a false statement made by the defendant to the Probation Department. Among other things, such circumstances are relevant to determining the history and characteristics of the defendant as well as to promote respect for the law. See 18 U.S.C. § 3553(a)(1), (a)(2)(A).

2.  The Defendant's Objections

In response to paragraphs 34 and 42, the defendant objected to their accuracy. The government, in turn, stated that although such misconduct does not constitute "relevant conduct" given the defendant's count of conviction, it is prepared to prove the allegations as they may be relevant to the Court's analysis under Section 3553(a).

In response to paragraph 55, the defendant objected to the inclusion of allegations concerning the threatened use of violence to John Doe #19, stating that he "never agreed with anyone that any violence would be used in the collection of any debt." (May 15, 2018 Def. PSR Obj. Ltr. at 3.) The government, in turn, stated that it agreed that the defendant was not aware of the threats to John Doe #19, but was part of a plot in July 2010 to assault an individual who owed the defendant money related to his illegal sports betting operation. (May 15, 2018 Gov. PSR Obj. Ltr. at 3.) The defendant states that although he disagrees with the government's position, he "does not intend to seek a hearing to address these issues." (May 29, 2018 Def. PSR Obj. Ltr. at 1.)

In response to paragraph 181 and 183, the defendant objects to the facts underlying his prior convictions. (May 15, 2018 Def. PSR Obj. Ltr. at 6-7.) The government asserts that the documents underlying the PSR, including New York City Police Department arrest reports, prove the allegations by a preponderance of the evidence. (May 15, 2018 Govt. PSR Obj. Ltr. at 4-5.)

B.  The Guidelines Calculation

The parties agree that the Guidelines calculation set forth in the plea agreement is correct:

Base Offense Level (§ 2E1.1(a)(1)):                                          19

Minor Participant (§ 3B1.2(b))[2]:                                           -2

---

[2] The only difference between the Guidelines calculation set forth in the plea agreement and that set forth in the PSR is that the PSR does not recommend a two-point minor role adjustment under U.S.S.G. § 3GB1.2(b) because the defendant's "involvement was essential to the success of the illegal gambling operation." PSR ¶ 78. Although the defendant was integral to the underlying illegal gambling business, the government submits that Giallanzo and Associate-1 were the primary actors in the conspiracy to collect the

| | |
|---|---:|
| Timely Acceptance of Responsibility (§ 3E1.1) | <u>-3</u> |
| Total Offense Level: | <u>14</u> |

Because the government asserts that the defendant's other criminal activity does not constitute relevant conduct, the government agrees with the defendant that he is in Criminal History Category I, which yields a Guidelines range of 15 to 21 months' imprisonment.

IV.     <u>Section 3553(a) Factors Weigh in Favor of a Guidelines Sentence</u>

   A.     <u>Nature and Circumstances of the Offense</u>

Despite his claims to the contrary, the defendant is an associate of the Bonanno crime family assigned to Ronald Giallanzo, a soldier and later, acting captain for the Bonanno crime family. The defendant exploited his relationship with Giallanzo to collect a gambling debt owed by John Doe #19.

Although the defendant may not have been aware of the specific threats made to John Doe #19, this is still a serious offense that merits significant punishment. To collect an unlawful debt, the defendant used the reach and power of the Bonanno crime family. Specifically, he relied on Giallanzo, who is an infamous and widely feared organized crime figure in the Howard Beach and Broad Channel communities. Indeed, the Bonanno crime family operates in large part through threats of violence based on its longstanding and storied history of committing violence, including murder and violent assaults, and therefore physical harm or overt threats are often not necessary to achieve its goals.

By conspiring with Giallanzo to collect the debt owed by John Doe #19, the defendant was not relying on Giallanzo's negotiation skills; he was relying on Giallanzo's well-known and well-earned reputation as a violent mobster. In fact, the defendant waited over year after John Doe #19 incurred the debt, when Giallanzo was released from federal prison, to have him collect the money owed. And it was not a lawful debt that the defendant wanted recovered – he was owed money from his illegal sports gambling operation. All of this constitutes serious misconduct worthy of a Guidelines sentence.

   B.     <u>History and Characteristics of the Defendant</u>

The defendant's conduct was not aberrational. The defendant has operated an illegal gambling business since at least 2005 and, as set forth in the PSR, would capitalize on a bettor's losses by loaning him money at extortionate rates of interest, causing the defendant to be paid many times over what he was owed. As one example, with respect to John Doe

---

unlawful debt, which is the count of conviction. Accordingly, the government respectfully submits that the minor-participation reduction is appropriate.

#11, the defendant received over $100,000 in interest payments after only loaning approximately $25,000.  See PSR ¶¶ 34, 42.

This criminal activity follows multiple prior brushes with the criminal justice system.  Beginning at age 19, the defendant was involved in violent crime when he fired a gun at a victim, causing serious injury.  See id. ¶ 181.  Despite such serious misconduct, the defendant was given a break and permitted to plead guilty to Assault in the Third Degree (a Class A misdemeanor), for which he was sentenced to only three years' probation.  See id.

The defendant did not learn from this mistake as a young man.  Rather, in 2000, the defendant pleaded guilty to another Class A misdemeanor, Insurance Fraud in the Fifth Degree, for which he was sentenced to a conditional discharge.  Only a year after this second conviction, the defendant pleaded guilty in 2001 to Attempted Assault in the Third Degree (a Class B misdemeanor) for slicing a victim on his neck with a pocketknife.

Despite these multiple convictions (which yielded extremely lenient punishments), the defendant was undeterred and continued his criminal activity, including by operating an illegal gambling business and ultimately using the Bonanno crime family to collect a gambling debt.  Time and time again, the defendant has demonstrated that non-incarceratory sentences have not caused the defendant to conform his conduct to the law.  Accordingly, a significant term of imprisonment is warranted to deter the defendant and "protect the public from further crimes of the defendant."  See 18 U.S.C. § 3553(a)(2)(C).

None of these offenses, including the offense of conviction, can be attributed to a rough upbringing or true financial need.  Indeed, the defendant has been able to operate a multitude of successful businesses, which presently yield over $150,000 per year in income, and the defendant expects "his income [from his heating and cooling business] to increase significantly."  See PSR ¶¶ 203-206.  Such achievements have resulted in the defendant amassing over $2.7 million in assets (compared to $1.9 million in liabilities).  See ¶ 218.

All of this financial success means that the defendant's crimes have been motivated by pure greed and a desire to align himself with a high-ranking member of the Bonanno crime family.  To add to his substantial legitimate income, the defendant decided to operate an illegal sports betting business.  When he was owed a debt as part of that illicit venture, the defendant turned to a powerful member of the Bonanno crime family for assistance.  That these actions were fueled by greed and reputational advancement rather than legitimate need reveals that a significant deterrent is needed to prevent him from committing future crimes.

    C.    Other Section 3553 Factors

A sentence of 21 months' imprisonment is also warranted to promote general deterrence.  See 18 U.S.C. § 3553(a)(2)(B).  The sentence imposed should send a message to others in the community that using the power and reach of the Bonanno crime family to further illegal activity will not be tolerated.  Others who may be owed money, particularly

debts generated by illegal activity, should know that turning to organized crime syndicates—who thrive on collecting unlawful debts, very often through acts and threats of violence—will result in a substantial punishment.

V.  Conclusion

For the foregoing reasons, the government respectfully submits that the Court should sentence the defendant to 21 months' imprisonment.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:     /s/
Lindsay K. Gerdes
Keith D. Edelman
Assistant U.S. Attorneys
(718) 254-6155/6328

Encl.

cc: Clerk of Court (DLI) (by ECF)
    Seth Ginsberg, Esq. (by ECF and E-mail)
    Jennifer G. Fisher, U.S. Probation Officer (by e-mail)