UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
UNITED STATES OF AMERICA                17 Cr. 155 (DLI)

   - against -

ROBERT PISANI,
                           Defendant.
-----------------------------------------------------x

# ROBERT PISANI'S SENTENCING MEMORANDUM

SETH GINSBERG
**Attorney at Law**
**299 Broadway, Suite 1405**
**New York, NY 10007**
**212-227-6655**
**srginsberg@mac.com**

*Attorney for Robert Pisani*

# **TABLE OF CONTENTS**

Introduction .................................................................................................................................. 1

A.      The Offense of Conviction ................................................................................................ 1

B.      The Plea Agreement .......................................................................................................... 3

C.      The PSR ............................................................................................................................. 4

D.      The Government's Sentencing Letter ................................................................................ 9

E.      The 18 U.S.C. § 3553(a) Factors ..................................................................................... 10

     1.      The Nature and Circumstances of the Offense and Pisani's History and Characteristics Support a Non-Guidelines Sentence. .................................................... 12

     2.      Additional Factors Under 18 U.S.C. § 3553(a) Support a Non-Guidelines Sentence. ... 15

Conclusion ................................................................................................................................. 18

**Introduction**

The Court is scheduled to sentence Robert Pisani on June 21, 2018. For the reasons set forth below, Pisani submits that a sentence below the applicable advisory range under the United States Sentencing Guidelines (the "Guidelines") of 15-21 months imprisonment is warranted.

In the sections below, we discuss the following: (a) the offense of conviction; (b) the terms of the plea agreement entered between the parties on November 17, 2017 (the "Plea Agreement"); (c) the Presentence Investigation Report, dated May 1, 2018, ("PSR"); (d) the government's sentencing letter to the Court, dated June 7, 2018 ("Gov. Sent. Ltr."); and (e) the factors set forth in 18 U.S.C. § 3553(a).

Taking all of the above into consideration—including, in particular, Pisani's post-offense rehabilitation, which is discussed below—it is respectfully submitted that a sentence below the advisory range is merited.

**A. The Offense of Conviction**

Pisani pleaded guilty to a superseding information in which he is charged with participating in an enterprise, during the period from January 1, 2011 through March 17, 2013, through his involvement in a conspiracy to collect an unlawful debt incurred in connection with illegal gambling activity in violation of 18 U.S.C. § 1962(d) ("RICO"). Pisani is remorseful for his conduct and accepts responsibility for having engaged in illegal activity. Without diminishing the seriousness of the offense or the significance of Pisani's conduct, it is, however, necessary to address certain inaccuracies in the government's letter and the PSR.

As an initial matter, it is noted that the offense of conviction centers on efforts to collect a single debt. *United States v. Giovanelli*, 945 F2d 479, 490 (2d Cir. 1991) (holding that RICO conviction can be sustained by proof of collection of single unlawful debt). As described in the

government's letter, in or about 2012, an individual identified as John Doe #19, incurred a gambling debt to Pisani. Gov. Sent. Ltr. at 1; *see also*, PSR ¶ 55. As also reflected in the PSR, John Doe #19 and Pisani did not agree on the amount of the debt. PSR ¶ 55. Not contained in the PSR, however, is that, on October 29, 2012, Superstorm Sandy hit the Broad Channel and Howard Beach sections of Queens, where Pisani lived and worked, with a brutal force that destroyed Pisani's home and businesses, and that, thereafter, Pisani made a conscious decision to mend his ways. Consequently, as indicated in both the PSR and the government's letter, Pisani made no efforts to collect the debt for a considerable period of time. PSR ¶ 55; Gov. Sent. Ltr. at 1-2.

      The government and Probation, however, inaccurately conclude that Pisani "waited over a year after John Doe #19 incurred the debt, when [a co-defendant] was released from federal prison, to have [the co-defendant] collect the money owed." Gov. Sent. Ltr. at 5; PSR ¶ 55. This is erroneous. Indeed, though the time period of Pisani's conduct as charged in the superseding information runs from January 1, 2011 through March 17, 2013, according to the government, the co-defendant was not released from prison until April 2013. Gov. Sent. Ltr. at 1.

      Moreover, though the government asserts that an individual referred to as Associate-1 "approached John Doe #19 and told him that he owed money to [Pisani] and [the co-defendant]," Gov. Sent. Ltr. at 2 (citing PSR ¶ 55), the government does not claim that Pisani had any knowledge that Associate-1 approached John Doe #19. Rather, the government states that "John Doe #19 paid approximately $6,000 to [the co-defendant] and his associates to repay the illegal debt owed to defendant." *Id.* Tellingly, the government does not claim that Pisani received any money.

2

Furthermore, though the government and Probation seek to taint Pisani with allegations that John Doe #19 was subject to threats of violence in connection with the debt, as reflected in his objections to the PSR, Pisani has no knowledge that any threats of violence were made against John Doe #19. Letter from Seth Ginsberg, Esq. to U.S. Probation Officer Jennifer G. Fisher, dated May 15, 2018 ("PSR Obj. Ltr."), at 3. Moreover—despite seeking to paint Pisani as a violent individual—the government has expressly stated that it "agree[s] that [Pisani] was not aware of the threats to John Doe #19 . . . ." Gov. Sent. Ltr. at 4; *see also* Gov. Sent. Ltr. at 2 (citing PSR ¶ 55) (acknowledging that there is no evidence that Pisani was aware that John Doe #19 had purportedly been threatened with a bat). Furthermore, the government expressly indicates "that [the co-defendant] and Associate-1—[not Pisani]—were the primary actors in the conspiracy to collect the unlawful debt . . . ." Gov. Sent. Ltr. at n. 2.

None of this is to say that Pisani is not responsible for his participation in an enterprise through his involvement in a conspiracy to collect an unlawful debt incurred in connection with illegal gambling. Pisani stands by his allocution at the time of his plea and accepts responsibility for his conduct. Consistent with ensuring that the Court has an accurate understanding of the scope of his conduct, however, Pisani considers it important that the Court is aware that his active involvement ceased in the aftermath of Superstorm Sandy; he did not employ nor was he aware that others employed threats of violence in connection with the collection of the debt at issue; and he did not receive any of the $6,000.00 that was apparently collected.

**B. The Plea Agreement**

As detailed in the Plea Agreement, the parties agree that Pisani is in Criminal History Category ("CHC") I and that, under the Guidelines, his offense level is 14, which is calculated as follows:

3

Base Offense Level (§ 2E1.1(a)(1)):  19

Mitigating Role (§ 3B1.2(b)):  -2

Acceptance of Responsibility:  -3

Total Offense Level:  14

Offense level 14 in CHC I has an advisory range of 15-21 months imprisonment. Plea Agreement at 3. Pursuant to the Plea Agreement, Pisani also agreed to forfeit $50,000.00, which has been paid in full.[1]

**C. The PSR**

In contrast to the calculations in the Plea Agreement, the Probation Department has concluded that Pisani has a sentencing range of 24-30 months imprisonment. PSR ¶¶ 170-79, 224. Probation's calculation is based upon two findings that are at odds with the Plea Agreement: (1) Probation has concluded that Pisani is in CHC II, not CHC I as determined by the parties; and (2) Probation takes the position that Pisani is not entitled to a two-level minor role reduction. It is respectfully submitted that the Plea Agreement is correct on both issues.

**First**, Probation claims that Pisani is in CHC II. Probation's determination is based on its conclusion that conduct charged in the underlying indictment alleging that, in 2005, Pisani was involved in an illegal sports betting operation, constitutes relevant conduct under the Guidelines. PSR ¶ 182. Thus, Probation maintains that Pisani's 1999 conviction for a Class A misdemeanor, for which he was sentenced to a conditional discharge and restitution, falls within the applicable ten-year period for the calculation of criminal history and places Pisani in CHC II. PSR ¶ 182.

---

[1] In accordance with the terms of the Plea Agreement, on June 13, 2018, a check in the amount of $50,000.00 was sent to the U.S. Attorney's Office, via FedEx for delivery on June 14, 2018.

4

The only authority that Probation cites for its determination regarding relevant conduct is U.S.S.G. § 4A1.2, n. 8, which indicates that the term "commencement of the offense" as used in § 4A1.2(e)(2) includes relevant conduct. PSR ¶ 182. The reference to this application note, however, does not resolve the question as to whether conduct charged in the underlying indictment to which Pisani did not plead guilty constitutes relevant conduct.

For its part, the government agrees with Pisani that the alleged 2005 gambling conduct does not constitute relevant conduct. Letter from A.U.S.A. Lindsay K. Gerdes and A.U.S.A. Keith D. Edelman to U.S. Probation Officer Jennifer G. Fisher, dated May 15, 2018 ("Gov. PSR Obj. Ltr.") at 3, 5 ("The government agrees with the defendant that this conviction does not affect the defendant's Criminal History Category because it occurred more than 10 years prior to the crime of conviction or commission of relevant conduct."); Gov. Sent. Ltr. at 5 ("Because the government asserts that the defendant's other criminal activity does not constitute relevant conduct, the government agrees with the defendant that he is in Criminal History Category I, which yields a Guidelines range of 15-21 months' imprisonment.").

Given the absence of any rationale for Probation's determination, it is respectfully submitted that Pisani is in CHC I, as agreed by the parties and reflected in the Plea Agreement, with a corresponding advisory range of 15-21 months imprisonment. Should the Court, however, determine that Pisani is in CHC II with a corresponding advisory range of 18-24 months imprisonment, for the reasons set forth below in the discussion of the § 3553(a) factors, it is respectfully submitted that a sentence below the low-end of the range in the Plea Agreement would still be warranted.

**Second**, Probation challenges the parties' determination that Pisani's minor role in the offense warrants a two-level reduction. PSR ¶ 78. This determination is based on Probation's

5

conclusory assertions that Pisani "played an integral role in the racketeering conspiracy . . ." and that "his involvement was essential to the success of the illegal gambling operation . . . ." PSR ¶ 78. As an initial matter, apart from the fact that the government plainly reached a different conclusion, Probation offers no support for its assertions.

Section 3B1.2 of the Guidelines provides for a four-level decrease if the defendant's role in the offense was "minimal" and a two-level decrease if the defendant's role was "minor." Alternatively, the defendant is entitled to a three-level decrease if his role falls in between "minimal" and "minor." A minimal participant is "plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." U.S.S.G. § 3B1.2, n. 4. A minor participant is someone who "is less culpable than most other participants, but whose role could not be described as minimal." *Id.*, n. 5.

"A sentencing court's assessment of the defendant's role in criminal activity is highly fact-specific and depends upon the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." *United States v. Carpenter*, 252 F.3d 230, 234 (2d Cir. 2001) (*quoting United States v. Shonubi*, 998 F.2d 84, 90 (2d Cir. 1993) (internal quotation marks omitted)); *see also United States v. Garcia*, 920 F.2d 153, 155 (2d Cir. 1990).

Thus, a defendant is considered a "minor participant," and is entitled to a two-level reduction, where his role is not important or critical to the success of the overall conspiracy. A defendant also plays a minor role where he is "essentially fungible," *United States v. Fernandez*,

6

312 F. Supp. 2d 522, 525 (S.D.N.Y. 2004), or is "replaceable" and is not a regular member of any organization. *United States v. Sanchez*, 925 F. Supp. 1004, 1013 (S.D.N.Y. 1996); *see also United States v. Ruiz*, 246 F. Supp. 2d 263, 272 (S.D.N.Y. 2002) ("Virtually anyone could have been inserted . . . without threatening the success of the enterprise."). In addition, "to be eligible for a reduction, the defendant's conduct must be 'minor' or 'minimal' as compared to the average participant in such a crime." *United States v. Rahman*, 189 F.3d 88, 159 (2d Cir. 1999) (*citing United States v. Ajmal*, 67 F.3d 12, 18 (2d Cir. 1995)); *see also* U.S.S.G. §3B1.2, n. 3(A).

As set forth in Pisani's objections to the PSR, Probation is incorrect in its determination regarding Pisani's entitlement to a minor role reduction. As discussed above, Pisani pleaded guilty to a RICO violation based upon a conspiracy to collect a single debt during the relatively brief period spanning from January 1, 2011 through March 17, 2013. Moreover, although the debt at issue was initially owed to Pisani, he was largely uninvolved in the efforts to collect it and did not receive any of the money that was ultimately collected.

In addition, the PSR itself amply illustrates Pisani's limited—i.e., minor—role. Indeed, in the first 166 paragraphs of the PSR, which relate to the overall RICO conspiracy charged in the underlying indictment and the alleged involvement of Pisani and his co-defendants, Pisani is mentioned in a mere 13 paragraphs, some of which mention Pisani only in passing. Notably, in the course of those 166 paragraphs, the vast majority of the numerous criminal schemes detailed are ones in which the government does not allege that Pisani had any involvement whatsoever. It is, therefore, difficult to understand how Probation—in contrast to the government prosecutors who investigated and brought this case—can determine that Pisani is not entitled to a minor role adjustment.

7

Furthermore, unlike Pisani's co-defendants, who, upon information and belief, pleaded guilty to the underlying indictment, which charges conduct spanning from 1998 up to and including 2017, Pisani pleaded guilty to a one-count superseding information spanning the comparatively brief period from January 1, 2011 through March 17, 2013, i.e., just barely more than two years.  The decision of the government to charge Pisani with conduct during a limited period of time is indicative of the reason for the government's conclusion that Pisani had merely a minor role in the overall conspiracy.

Moreover, though Probation claims that Pisani played an important role in an illegal gambling operation, Pisani did not plead guilty to running an illegal gambling operation.  He pleaded guilty to conspiring to collect an illegal gambling debt.  Thus, even if true, the conclusion that he was "essential to the success of the illegal gambling operation" is inconsequential.  Furthermore, the underlying indictment charges Pisani with involvement in just one of five gambling operations allegedly operated by the RICO enterprise.  Consequently, it does not follow that his involvement in a single gambling operation would require a finding that he played a significant role in the overall RICO conspiracy.

Thus, given the limited scope of Pisani's conduct—particularly as measured against the scope of the overall enterprise charged in the underlying indictment—Pisani plainly played a minor role.  Indeed, the government charged an enterprise comprised of an elaborate management structure, including upper management, middle management, and official members.  Pisani, however, is alleged to be a mere associate of the enterprise without any official role; he was, therefore, plainly a fungible element in the overall enterprise.  Thus, apart from the limited scope of the offense of conviction, Pisani's role in the charged enterprise is clearly far more

8

limited than that of the average participant in a RICO offense of the magnitude charged in the underlying indictment.

Furthermore, Pisani's involvement was arguably less significant than three co-defendants whom Probation has determined are entitled to minimal role reductions, including, astoundingly, one who—according to Probation—obstructed justice, committed perjury, and engaged in loansharking. PSR ¶¶ 154-55. More specifically, according to Probation, the individual "obstructed justice and committed perjury during the instant investigation . . ." in that, among other things, in testimony before a grand jury, he lied under oath regarding the loansharking conduct to which he pleaded guilty in the instant matter. PSR ¶ 155. In light of Probation's support of a minimal role adjustment for this individual, there does not appear to be any justification for its determination that Pisani does not merit a minor role adjustment.

Thus, Pisani respectfully submits that he should receive a two-level reduction for his minor role in the offense. Consequently, as indicated in the Plea Agreement, Pisani has a total offense level of 14, which, in CHC I, has an advisory range of 15-21 months imprisonment.

### D. The Government's Sentencing Letter

As discussed above, the parties agree that Pisani has an offense level of 14 and falls in CHC I, which has an advisory range of 15-21 months imprisonment. In its sentencing submission, however, the government requests that the Court sentence Pisani at the upper end of the advisory range. The government's argument is based almost entirely on conduct to which Pisani did not plead guilty and conduct with which he is not charged. For the reasons discussed below, we submit that the government's argument is not compelling.

With respect to the allegations concerning conduct charged in the underlying indictment to which Pisani did not plead guilty, as discussed above, the government made a considered

9

decision to charge Pisani in a one-count superseding information that does not include the allegations on which it now relies. In our view, that Pisani was unwilling to plead to the underlying indictment and that the government chose to charge him in the superseding information rather than try him on the indictment speaks volumes. Thus, though we appreciate that the Court must have as complete a picture as possible when sentencing a defendant, we submit that the government's reliance on conduct that it opted to forego prosecuting runs counter to the spirit of the Plea Agreement.

In addition to conduct charged in the underlying indictment to which Pisani did not plead guilty, the government also makes claims regarding the sale of property located at 164-04 86th Street, Howard Beach, New York. Gov. Sent. Ltr. at 2, 3-4. This transaction was the subject of an extensive grand jury investigation that did not result in any charges being brought against any party involved in the transaction. Moreover, upon information and belief, the government's claims in connection with this transaction are based on little more than the word of a cooperating witness without personal knowledge of the facts.

The government's remaining claims regarding Pisani's history and characteristics are addressed below in the discussion of the § 3553(a) factors.[2]

### E. The 18 U.S.C. § 3553(a) Factors

The factors set forth in 18 U.S.C. § 3553(a) warrant a sentence below the advisory Guidelines range of 15-21 months. As discussed below and elaborated in detail in the letters submitted from Pisani's family and friends, Rob Pisani is an exceptionally giving individual to family, friends, and the community at large. Moreover, well before his arrest in the instant

---

[2] Pisani has not addressed every issue in dispute identified in the government's submission but is prepared to discuss any issues that may be of concern to the Court.

10

matter, Pisani had ceased his involvement in the charged criminal conduct as the result of a catastrophic loss that sparked a life-altering change in him.

It is well established that, in addition to the Guidelines, the Court must consider the factors enumerated in 18 U.S.C. § 3553(a):

> The Court shall impose a sentence sufficient, but not greater than necessary, . . . [and] shall consider—
>
> 1. The nature and circumstances of the offense and the history and characteristics of the defendant;
>
> 2. The need for the sentence imposed—
>
>    a. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>    b. To afford adequate deterrence to criminal conduct;
>
>    c. To protect the public from further crimes of the defendant;
>
>    d. To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> 3. The kinds of sentences available;
>
> 4. The kinds of sentence and the sentencing range established . . . [by the Sentencing Guidelines];
>
> 5. Any pertinent policy statement . . .
>
> 6. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> 7. The need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a) (some minor alterations not noted).

Though the Guidelines are an important factor in the sentencing analysis, they are only advisory, and the Court is generally free to impose a non-Guidelines sentence. *United States v.*

11

*Gall*, 128 S. Ct. 586 (2007); *United States v. Booker*, 543 U.S. 220 (2005). The Court's authority in this regard is consistent with the fundamental principle that a sentencing court should consider the full scope of a person's life in an effort to sentence the individual as opposed to the crime:

> "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States,* 518 U.S. 81, 113 . . . (1996). Underlying this tradition is the principle that "the punishment should fit the offender and not merely the crime." *Williams [v. New York],* 337 U.S. [241,] 247 [(1949)] . . . .

*Pepper v. United States*, 562 U.S. 476, 487-88, 131 S. Ct. 1229, 1239-40 (2011) (holding that post-sentencing rehabilitation is an acceptable basis for non-Guidelines sentence on resentencing after appeal).

As we demonstrate in the sections that follow, in our view, a non-Guidelines sentence is sufficient but not greater than necessary to achieve the goals enumerated in 18 U.S.C. § 3553(a).

> **1. The Nature and Circumstances of the Offense and Pisani's History and Characteristics Support a Non-Guidelines Sentence.**

The details regarding the nature and circumstances of the offense set forth above are not repeated here. For present purposes, we highlight for the Court that Pisani has accepted responsibility for having conspired during the limited period from January 1, 2011 through March 17, 2013 to collect a single unlawful debt incurred in connection with illegal sports betting. According to the PSR, a total of approximately $6,000.00 was ultimately collected, though not by Pisani. In addition, although the PSR indicates that a co-conspirator used threats

12

of violence to collect the debt, as the government has agreed, there is no evidence that Pisani had any knowledge that any threats were made.

The above notwithstanding, Pisani does not seek to minimize the seriousness of his conduct. Indeed, Pisani accepts responsibility for having engaged in a serious violation of the law and is deeply remorseful for having done so. His regret is, perhaps, best evidenced by the fact that his conduct ceased in early 2013, some four years prior to his arrest and more than five years prior to the date of sentencing. In the ensuing years, Pisani's character of kindness, support of others, and his devotion to his community have flourished.

As reflected in the letters of his family and friends who know him best, Pisani is a selfless individual who has time and again extended himself to help his family, friends, and community. Notably, the letters come from a wide variety of individuals, including numerous former employees, local firefighters, a City Councilman, a New York City Police Department Detective, nurses, doctors, teachers, and many others. The life experience of these individuals varies vastly, but their experience of Pisani is consistent—he is a caring, devoted friend, who consistently extends himself when people are in need, in both large ways and small.

It is uniformly agreed that Pisani is devoted to his wife and two young children. He is an actively involved father, attending school performances, coaching sports teams, and generally engaging with his children and providing positive guidance. He is also deeply committed to his wife, Jamie. His love and connection to Jamie is evident to all who encounter them, not least of all, his wife's parents, both of whom wrote compellingly to the Court regarding their love for, and support of, the son-in-law they think of as a son.

Pisani is also deeply connected to his mother and brother, both of whom live with him and his wife and children. Given his early childhood experiences, which are detailed with stark

13

sincerity in the letter of his brother, Alex, Pisani's familial connections are a testament to his caring and loving spirit. Indeed, despite being the younger brother, when the family lost Pisani's father when Pisani was just 19, Pisani rose to the occasion to lead the family—something that continues to this day.

Numerous former and current employees and their families have also shared with the Court their experiences of Pisani's generous nature, positive influence, strong work ethic, and willingness to assist in times of need. It is clear from their letters that Pisani is far more than an employer for these people—he is a teacher, a role model, an older brother, a friend, and a confidant on whom they know they can depend. Indeed, many of his former employees credit Pisani with their accomplishments in their own businesses and professional endeavors.

Pisani's nature was perhaps best displayed in the aftermath of Superstorm Sandy, which, on October 29, 2012, hit the Howard Beach and Broad Channel neighborhoods of Queens with crushing force that destroyed Pisani's businesses and his home. As reflected in numerous letters to the Court, Pisani's life was devastated following the storm. Pisani, however, true to his nature, extended himself time and again to aid his community. He provided food and other goods from his stores to community members in need, including first responders and FEMA personnel; he engaged in fundraising efforts to assist in the rebuilding of the community; and he was simply *there* for many people who needed him. He did all of these things while being displaced from his own home and sifting through the wreckage in his businesses.

Though admirable—as made clear in the letters to the Court—Pisani's readiness to assist in the aftermath of the storm is in keeping with the manner in which he has conducted himself throughout his life. Whether someone has had a death in the family, a family member who is ill,

14

the birth of a child, or been in need of employment, Pisani has consistently stepped up, not just for his family and friends, but for the entire community.

In addition, apart from his noble efforts to assist his community in a time of tragedy, following Superstorm Sandy, as a husband with two young children, Pisani made a conscious decision to cease his illegal conduct and to focus on his family and his businesses.  Tellingly, consistent with Pisani's change of course following the storm, during the investigation of his case, "Pisani was not captured on any consensual recordings or wiretap recordings," which were made largely during the period from 2013 through the date of the indictment.  PSR Obj. Ltr. at 1.  Moreover, though the government opposes Pisani's request to have the PSR amended to include the fact that Pisani was not captured on any recordings, the government does not dispute the accuracy of the statement.  Gov. PSR Obj. Ltr. at 2.

Thus, as the letters from Pisani's family and friends demonstrate, though he has made mistakes, he is a man with strong redeeming qualities that make him a valuable member of society.  Consequently, while the government may choose to depict a monolithic character defined by his mistakes, there is much more to Rob Pisani and, when viewed in totality, we submit that his positive qualities and contributions far outweigh the negative.  Accordingly, in our view, Pisani's history and characteristics support a non-Guidelines sentence.

### 2. Additional Factors Under 18 U.S.C. § 3553(a) Support a Non-Guidelines Sentence.

We respectfully suggest that a non-Guidelines sentence is sufficient but not greater than necessary to achieve the goals of § 3553(a)(2).  We similarly submit that it is sufficient to provide both a general and specific deterrent to future criminal conduct.

With respect to Pisani's own future conduct, his history since 2013 is powerful evidence that he is not likely to find himself in trouble of this sort ever again.  Since 2013, he has engaged

in positive, productive conduct. Prior to his arrest in the instant case, he operated numerous businesses in which he employed a great number of individuals and provided valuable service to his community. Since his arrest, he has remained committed to his business, working many hours each day from home and in his business location when he has been permitted.

As Pretrial Services reported to the Court, Pisani has faithfully abided by the conditions of his release. Initially, Pisani was released subject to home confinement with permission to leave his home for employment and other specified reasons. As the result of his May 4, 2017 arrest on unrelated state charges, however, after initially seeking revocation of bail, the government entered into a stipulation with Pisani pursuant to which he was to remain on bail subject to strict home confinement.[3]

After seven months on strict home confinement without incident, and following his plea of guilty in the instant matter, with the consent of the government, the Court granted permission for Pisani to leave his home to attended to his business for several hours multiple times per week, exercise at a gym a few days per week, and attend a variety of family events, such as school and sporting activities in which his two children are engaged.[4] In the seven months that have elapsed in which Pisani has been allowed increased freedom, he has consistently honored the conditions of his release, further demonstrating his commitment to a law-abiding path.

It is, therefore, respectfully submitted that Pisani's conduct while on bail demonstrates that the public is not in danger of him committing future crimes.

---

[3] Trial of the New York State action is scheduled to commence on June 14, 2018 and we will apprise the Court of the result.

[4] Pisani recognizes that the government's consent to the modification of his conditions of release is not inconsistent with the government's request for a sentence of incarceration.

The government claims that Pisani's prior non-incarceratory sentences evidence the need for a stronger deterrent to future criminal conduct. Gov. Sent. Ltr. at 6. The government, however, ignores that Pisani's prior convictions occurred between 17 and 20 years ago when Pisani was unmarried, without children, and a relatively young man still in his twenties. By contrast, Pisani is now 45 years old, and he has a wife and two young children who are the driving motivators in his life.

In addition, as set forth in Pisani's objections to the PSR, Pisani disputes the allegations in the charging instruments that form the basis of his prior convictions. In particular, Pisani maintains that he never discharged a firearm and that he did not use a knife to cut anyone. PSR Obj. Ltr. at 6. It is, therefore, submitted that the offenses of which Pisani was convicted many years ago should have little bearing on the Court's decision in the instant matter.

We respectfully suggest that the additional factors enumerated in § 3553(a) do not justify a different conclusion. Pisani is not in need of "educational or vocational training, medical care, or other correctional treatment . . . ." 18 U.S.C. § 3553(a)(2)(D). Additionally, a non-Guidelines sentence will not create any unwarranted sentencing disparities.

Thus, for all of the above-stated reasons, we submit that a non-Guidelines sentence is sufficient but not greater than necessary to achieve the statutory mandate.

## Conclusion

For the foregoing reasons, we respectfully request that the Court impose a non-Guidelines sentence.

Dated:  New York, New York
        June 13, 2018

>                                        Respectfully Submitted,
>
>                                        s/SETH GINSBERG
>                                        Attorney at Law
>                                        299 Broadway, Suite 1405
>                                        New York, NY 10007
>                                        212-227-6655
>                                        srginsberg@mac.com
>
>                                        *Attorney for Robert Pisani*

18